## Sauls et. al. v. Denkman Lumber Co.

[86 South. 265. No, 21123.]

Logs and logging.  *Deed construed to convey only pine timber standing on described land.*

A deed conveying "all pine timber and timber like trees" being, growing, and standing, "and being one hundred and ninety-five acres of good pine timber," is a conveyance only of the pine timber on the land.

Appeal from circuit court of Lawrence county.
Hon. A. E. Weathersby, Judge.

Action by John R. Sauls and others against the Denkmann Lumber Company. Verdict for plaintiffs as to a part of their claim. From the rulings and judgment, plaintiffs appeal. Reversed, and cause remanded.

*Magee & Gibson,* for appellants.

The deed for the timber which appellants made to appellees recited as follows: "All pine timber and timber-like trees now being, growing and standing, etc." Under this deed appellees claimed and cut all the timber of every kind found on the land. Appellants contended that the appellees were only entitled to the pine timber. Thus the issue was quickly drawn between them and this lawsuit to settle that issue. Appellants contend that in passing upon the issues involved a jury should be permitted to use their own common knowledge in connection with the evidence which they hear from the witnesses.

On the first point involved, that is, as to whether the deed might be explained to show that nothing was meant to be conveyed except the pine timber, we think this court has settled and put beyond dispute the right of appellants to show by parol testimony what was the understanding and intent of the parties at the time the deed was made.

In the case of *Kerl* v. *Miller,* 96 Miss., 827, 51 So. 3, the court said, that evidence of this character was not for the purpose of contradicting but for the purpose of explaining the meaning of the terms used in the deed. In fact appellants here should have been allowed to show that at the time this deed was made nothing but pine timber was being bought by appellee; nothing was estimated by the buyer or seller at the time except pine timber and that this pine timber was figured out by the thousand as we offered to show and as the consideration expressed in the deed shows. But the trial court refused to permit us to show these things, and that, too, right in the face of the Kerl case referred to above. In the *Kerl case, supra,* the word "timber" was used, but in the deed here before the court the words "pine timber and timber like trees" were used. And we submit that any grammarian on the earth, if called upon to construe the meaning of this deed would say unhesitatingly that the words "timber like trees" related back and refers to "pine timber" and could not be construed to mean and to include all timber of every kind and description as the appellees contend. So we submit the case referred to above settles this point in our favor and that by every sort of reason we should have been permitted by the trial court to show that appellants sold and appellees bought only the pine timber on the land and did not buy the oak, hickory, gum or other timber, and should have been permitted, in order to strengthen this view of the matter, to show that appellees at that time were buying nothing but pine.

*Brady & Dean,* for appellees.

Appellants conveyed to D. J. Batchelder, Jr. " . . .All pine timber and timber like trees . . . " There is in this description nothing uncertain or ambiguous. By it there were conveyed all (1) pine timber and (2) timber like trees. Adopting a definition of Mr. Webster, this court, in *Butler & Barrow* v. *McPherson Bros.,* 49 So. 257,

held that timber means that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships and the like . . ." Also, in *Clay* v. *Telegraph Company,* 70 Miss. 406, this court said of trees: "A tree is a woody plant, whose branches spring from and are supported upon a trunk or body, and the tree may be young or old, small or great."

Appellants, therefore, were selling the pine timber, and in addition, thereto, were selling all the trees which approximated timber, were like timber.  For that reason, the court granted to appellants the instruction "that defendant had no right to take from plaintiff's land any wood and pine not conveyed to it in the deed which has been introduced in evidence, and the defendant is liable to the plaintiffs for the value of all such wood, if any taken therefrom."  That is, if defendant and appellee took anything except pine timber and timber like trees it was liable to appellants for its value.

Strictly speaking, not every stick of timber is a tree, nor is every tree timber.  At some time or other every stick of timber may have been a tree, but there are many trees which never were, are not and never will be timber The terms are not synonymous nor interchangeable.  Appellee feels that it is arguing such a question to appellants rather than to this court to whom it is clear.

Had Mr. Batchelder been intending to buy only pine, as appellants seek by parole to establish in the face of the deed, then the description of the wood would have read:

"All pine timber now being, growing, etc.   . . . " But Mr. Batchelder bought, and appellants sold, more than this, they dealt with all such timber like trees as might be on the land interspersed with the pine timber. From these timber-like trees, in addition to other natural uses, Mr. Batchelder and his assigns could obtain hardwood cross-ties, bridge timbers and log wagon parts. We mention hardwood, because that is all that appellants seek now to recover for.  As a matter of fact, whatever kinds of trees were that were like timber they were sold by the

deed, otherwise the words "timber like trees" mean nothing, and their peaceful removal warranted by the very persons who now seek to obtain exaggerated damages on an interpretation fearfully and wonderfully framed.

Note that appellants do not seek to show that they were in any manner misled. They did not want to get into a chancery court, having more hopes of the "common information" of a jury. They evidently overlooked the fact that a circuit court passes on legal questions as well as a chancellor. In support of their strange interpretation of the deed, appellant seeks to stretch the case of *Kerl & Smith,* so as to have it apply.

The principles of law are totally different. Between Kerl and Smith there was what purported to be a contract, but which was signed by Smith only, and which was in effect an acknowledgment of the receipt of a horse sold to him for one hundred thousand feet of timber, any deficiency in the one hundred thousand feet of timber to be paid in money by Smith. Kerl sued for eighty-five dollars, claiming that there were only fifteen thousand feet of timber on Smith's lands. Immediately, the question of what was "timber" became vital, and there was nothing in the "contract" to show. The contract was ambiguous and parol evidence became admissible. As Judge Mayes said: "Such testimony is in no sense contradictory of the terms of the contract, but it is essential to explain its meaning since the contract itself does not do that.

What similarity between that case and this? Absolutely none. There is no ambiguity in this instrument, for a stipulated cash consideration there is conveyed all the pine timber and timber like trees, without estimation, warranty of quantity or provision for deficiency. There was an unacknowledged, unrecordable memorandum hardly rising to the dignity of a bill of sale; here is a solemn deed, intended to be placed on the public record and serve as a muniment of title for fifty years. If it appears, after a lapse of fifteen years and more, and after the original purchaser's mouth is closed in death, that the grantors might have held this timber with advantage to themselves,

they cannot now come in and in any respect add to, or take away from, the words of their deed. As it is written, so must it be. See also 18 Corpus Juris, p. 257, (art. 204) B.

The testimony which appellants offered could only be admissible where there was a patent ambiguity on the face of the instrument, which there is not. The most that their claim amounts to is that their reading, the repetition of the word "pine" before "timber like trees" will limit the conveyance. It was not so written; the language is plain, and the recitals of the deed are most strongly construed against the grantor. See *Soria* v. *Harrison County*, 50 So. 443.

The deed conveys "all pine timber" and it conveys something more, namely, timber like trees. Not all trees and all timber like trees are timber, it is perfectly evident from the deed that appellants were conveying not only pine timber but also timber like trees, without limitation and therefore, not only pine timber was conveyed but also trees which were timber like. Qualifying adjective "pine" cannot be said to be understood for the reason that pine timber is one object conveyed and timber like trees, is another object conveyed, and these two objects are different, varying in so many respects as to make them of different classes, and, therefore, the qualifying word is not understool before the name of the object of the second class.

Appellants cannot now, at this late date, come into court and by strained grammatical construction of a deed, or by offering evidence to explain the deed, long after the vendee's mouth is closed in death, write into the words of the deed itself a limitation which the face of the whole deed shows the vendors and vendee never intended should be there.

Reverting briefly to appellant's contention that the court erred in not allowing the jury to use their "common information," we quote from Abbot's Civil Jury Trials, page 724, paragraph c, as follows: "The ancient doctrine was that jurors were to render the verdict as well upon facts within their personal knowledge, as upon those derived from the testimony of the witnesses duly sworn and tes-

within their personal knowledge, as upon those derived from the testimony of the witnesses duly sworn and testifying in the case. The present rule, however, is that jurors cannot act upon their personal knowledge of facts in the case; but must base their verdict upon the testimony of the witnesses."

What appellants undoubtedly were hoping was the possibility of their being one or more jurors in the panel who had some time seen some skidder in operation under some conditions, and possibly saw some log making a trench as it was pulled in, and from this common information, under the instructions asked, rejected the entire testimony of Messrs, Robbins, Carey, Mullins, Minton, Blue, Honea Shivers and Reed, disputed only by J. R. Sauls. The gross unfairness, and therefore illegality, of this is too apparent for further argument.

From every phase of this record, it is apparent that the trial court was essentially correct, and that the judgment appealed from must be affirmed.

Holden, J., delivered the opinion of the court.

This is a suit by the appellants against the appellee, Denkmann Lumber Company, to recover damages in the sum of three thousand eight hundred dollars for the alleged wrongful cutting and removal of hardwood timber, other than pine timber, from certain lands owned by the appellants, and for the wrongful appropriation of firewood from said lands, and also for damages for injury to the land, caused by the use of a "skidder" in removing the timber. The trial court refused to allow recovery for the cutting and removal of the hardwood timber, and refused to allow damages occasioned by the "skidder," except such as were caused by negligence, resulting in injury to the land; but the jury were allowed to return a verdict for one hundred dollars as damages for down timber, which was converted into firewood. From these rulings and judgment of the lower court, Sauls appeals, and presents two questions for our decision.

The appellants contend: First, that the court erred in refusing to allow a recovery for the hardwood timber cut

and removed from the lands; second, for refusing appellants' right to recover damages for the injury done to the land by the use of the "skidder." The determination of the questions presented depends upon the construction of the deed executed by appellants to Batchelder in 1902, through whom the appellee, Denkmann Lumber Company, derived title to the timber here in question.

In order that we may better understand the proposition involved as we go, let us note here that the appellee lumber company contends that under the terms of the deed, which will be hereafter set out, it had the right to cut and remove all pine timber and all other timber, including hardwoods, that was growing, standing, or being upon the lands described in the deed; and that it had the right to remove said timber by the use of a "skidder," and cannot be held in damages for any injury to the land on account of the operation of the "skidder," unless such damage was caused by negligence. On the opposite side it is contended that under the terms and meaning of the deed the grantor conveyed only the pine timber and pine trees on the land, and that the deed does not convey hardwood, or timber other than pine timber, and that the deed does not authorize the use of a "skidder" in removing the timber, for the reason that it was not within the contemplation of the parties, at the time of the execution of the deed, that such a device or contrivance would be used in the removal of the timber.

We shall now set out the entire deed in question, so that it may be viewed fully in all of its material parts:

"For and in consideration of the sum of twelve hundred and sixty-seven dollars and fifty cents, cash in hand to me paid by D. J. Batchelder, Jr., the receipt whereof is hereby acknowledged upon the delivery of these presents, we do hereby convey and warrant unto him, the said D. J. Batchelder, Jr., all pine timber and timber like trees now being, growing and standing on the following described lands, situated, lying and being in said county of Lawrence, in the state of Mississippi, to wit: The South one half of Northwest quarter of section fourteen, Township 5, North, Range 11 East and twenty acres on the west side of the Northeast quarter of Southwest quar-

ter, and five acres on the north side of the Northeast quarter of Southwest quarter, and thirty (30) acres on south side of Southwest quarter of Southeast quarter, and twenty-five acre on south side of Southeast quarter of Southeast quarter, all in section 14, Township 5 North, Range 11 east, and Northeast quarter of Northeast quarter of section 23, Township 5 North, Range 11 East, and being one hundred and ninety-five (195) acres of good pine timber, together with the right to enter, cut and remove the same within fifty (50) years from this date, with carry logs, log wagons, vehicles and contrivances. Also the right to construct and operate a railroad or tram road of wood, iron or steel over, through and across said lands. In consideration of the said premises aforesaid we do further convey and warrant unto him, the said D. J. Batchelder, Jr., a permanent and perpetual right of way of one hundred feet in width between parallel lines over, through and across said lands for railroad or other purposes."

It will be observed that for one thousand two hundred and sixty-seven dollars and fifty cents the grantor conveyed " 'all pine timber and timber like trees' now being, growing and standing on the following described lands," and after describing the land upon which the timber is situated the deed recites "and being one hundred and ninety-five acres of good pine timber." We are called upon to decide from this language of the deed whether the grantor intended to convey all kinds of timber and timber trees being, growing and standing on the land, or whether it was meant to convey only the pine timber on the land.

After diligent search we have been unable to discover in any law book the descriptive term "timber like trees," therefore, we must accept it to mean what the words usually and commonly purport in the particular sentence. When read in connection with the subject-matter of the sentence, to wit, "pine timber," with the conjunctive "and," which joins the two descriptions, "pine timber" and "timber like trees," we must conclude that the grantor intended only to convey the pine timber on the land. In such a sentence the subject word "pine" qualifies the word "timber" and

also the words "timber like trees." It may be that the words "all pine timber" were sufficient to convey all pine timber being, growing, and standing upon the land, and that the words "and timber like trees" added nothing more than was already conveyed by the words "all pine timber," and may be said to really mean nothing, yet it seems clear to us that the grantor used the words with the intent to convey all other pine timber in "timber like trees," which possibly might not be included in the term "all pine timber." At all events, he could not have intended to convey other timber than pine timber by the language used in the whole sentence, but meant to convey the kind of timber only which was the subject of the sentence, viz. "pine timber."

In discussing the proposition, it may well be argued that the grantor had conveyed all of the pine timber on the land, when he used the words "all pine timber," and that, if he meant anything at all in adding the words "and timber like trees," he meant to include all trees, both pine and hardwood, on the land, and that, if the words "timber like trees" are construed to mean and add nothing, it would be to strike the words "timber like trees" from the instrument, and leave only those describing "pine timber;" whereas, under the rules of construction, the court should give meaning to all of the words, if possible to do so, and construe the instrument strongest against the grantor. But we go upon the reasoning that, if the words "timber like trees" on the land are to control and be given their full meaning, then the words "all pine timber will appear to be useless and meaningless, because "all timber like trees" would include all pine trees on the land as well as hardwood. Therefore, if we must determine which shall stand and govern, all pine timber" or "timber like trees," we think it clear that the words "pine timber" in the sentence denote the subject-matter, and should be given the preference and control in the construction, because they qualify the term "timber like trees," and if only one term is to be given meaning and force, the one containing the subject,

"pine timber," should prevail.  If it were held that the words "timber like trees" supersede the words "all pine timber," then under the *Kerl Case,* 96 Miss. 827, 51 So. 3, oral testimony would be permissible to show the character of timber conveyed; but we think it unnecessary to show by testimony the kind of timber meant by "timber like trees," because the preceding subject word, "pine," determines the character of "timber like trees" to be pine timber like trees.

The latter clause in the deed, "and being one hundred and ninety-five acres of good pine timber," may not be material in the construction of the former sentence, because such clauses in deeds generally refer to the quantity conveyed; but here it seems to have reference to the quantity, character, and quality of the property conveyed, and may be considered as throwing some light upon the meaning of the former terms.  It aids to the extent at least of showing that the subject foremost in the minds of the parties was "pine timber;" and, while we do not go to the extent of saying that this clause impliedly excludes all timber other than pine timber, still we think that, if it lights the way in any direction, it is to strongly indicate that the grantor was selling one hundred and ninety-five acres of good pine timber at six dollars and fifty cents per acre.. However, we should reach the same conclusion in the main, if the deed had not contained this clause.

On the second proposition, that the court erred in not permitting a recovery for injury done to the land by the operation of the "skidder," we shall refrain from passing on this question at this time, because, first, it is unnecessary to do so, since the judgment will be reversed; and, second, as we consider it an important question, we would prefer that it be better developed by the record, and more fully presented and argued by counsel, before we decide it.  However, it will not be out of place to point out that the appellant contends that, at the time the deed in question was executed, eighteen years ago, the device or "contrivance" now known as a "skidder" was not in existence

and was unknown to the parties to the contract, and that it was not contemplated by the grantor that a contrivance of this character would be used in removing the timber; that in its operation the land is damaged; even though operated without negligence; and that the right given in the deed to remove the timber with "carry logs, log wagons, vehicles and contrivances," contemplated only such contrivances as are similar to log wagons and vehicles such as were generally used at that date, invoking the rule of "ejusdem generis."

This contention may or may not be well grounded. We do not say; but if the deed permits the use of any kind of contrivance, for instance, a large war tank, in removing the timber then no damages could be recovered for injury to the land; but if only such device or contrivance as is similar to log wagons and such vehicles can be used in the removal, and the timber is removed by any other device not contemplated by the parties, then it may be that recovery can be had for the damage in excess of that damage which would have been done by the log wagon and similar contrivances. It may be that a "skidder" does no more actual damage than other contrivances used in 1902; but this we apprehend would be a question of fact, to be determined in the particular case.

The appellee's position that the deed gives a right to use the "skidder," or any other contrivance which was used at the time of the execution of the deed, or that may come into existence during the life of the contract, which is fifty years, if used in a reasonably prudent manner, so as to do no damage except that which is necessary and incidental to removing the timber, presents a view that, if not sound, is at least debatable.

The judgment of the lower court is reversed, and the case remanded.

*Reversed and remanded.*